**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0935-19T2

1567 SOUTH REALTY, LLC
and BUTLER NISSAN,

     Plaintiffs-Appellants,

v.

STRATEGIC CONTRACT
BRANDS, INC., d/b/a
AUTOSTONE FLOOR SYSTEMS,

     Defendant-Respondent.

_____

Submitted May 19, 2020 – Decided July 9, 2020

Before Judges Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. C-000061-19.

Bruce E. Baldinger, attorney for appellants.

Brach Eichler LLC, attorneys for respondent (Anthony M. Rainone, of counsel and on the brief; Mark Edward Critchley, on the brief).

PER CURIAM

Plaintiffs 1567 South Realty, LLC and Butler Nissan appeal from an October 18, 2019 Chancery Division order dismissing their complaint and compelling arbitration. We affirm.

On March 14, 2018, Butler Nissan and defendant Strategic Contract Brands, Inc., D/B/A AutoStone Floor Systems (AutoStone) entered into a commercial construction contract for AutoStone to install new flooring at Butler Nissan's motor vehicle dealership. The original contract price of $75,000 was later amended to $78,045. Kevin DiPiano, the president of Butler Nissan, signed the contract on behalf of Butler Nissan.[1] The arbitration provision at issue states:

> Arbitration. If a controversy or dispute arises out of or related to AutoStone's performance under this Contract, and if said dispute cannot be settled between the parties to this Contract themselves, the parties hereto hereby agree to settle the dispute as provided under the Federal Arbitration Act, by binding arbitration according to the Commercial Arbitration Rules of the American Arbitration Association [AAA], and the judgment upon the award rendered by the arbitration(s) may be entered in any court having jurisdiction thereof. The parties hereto further agree that a controversy be submitted to one or three arbitrator(s), at either party's option, selected from the panels of arbitrators of the [AAA]. All requests for arbitration shall be submitted to the Dallas office of the [AAA] and all arbitration

---

[1] DiPiano also serves as the president of 1567 South Realty, owner of the property where Butler Nissan operates.

administration costs shall be borne equally by all of the parties to the dispute.

The contract also included the following venue provision: "The law of the State of Texas shall govern this [c]ontract, with venue to be in any court of competent jurisdiction in Dallas County, Texas."

AutoStone alleged that after it completed the floor installation on April 10, 2019, Butler Nissan owed a remaining balance of $40,545 on the contract. Butler Nissan's representative sent emails to AutoStone complaining of problems with the overall quality of AutoStone's workmanship, including use of inadequate materials, and unevenness and "pooling" in the flooring. After Butler Nissan refused to pay its remaining balance, AutoStone filed a construction lien against Butler Nissan's property on May 31, 2019, pursuant to N.J.S.A. 2A:44A-1 to -38.

In June 2019, plaintiffs filed a Chancery Division complaint in Morris County, seeking removal of the construction lien and alleging AutoStone violated the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20. On August 16, 2019, AutoStone filed a motion to dismiss plaintiffs' complaint, pursuant to the arbitration provision in its construction contract, and sought to bind 1567 South Realty to the arbitration provision in the contract as an alter ego of Butler Nissan.

A-0935-19T2

On October 18, 2019, the motion judge issued an order granting AutoStone's motion to dismiss and compelling arbitration. Relying on Roman v. Bergen Logistics, LLC, 456 N.J. Super. 157 (App. Div. 2018), the judge found the parties were sophisticated commercial entities, had equal bargaining power, and entered into a commercial construction contract at arm's-length. The judge noted Butler Nissan did not allege fraud, duress, or that the arbitration provision was inconspicuous. Additionally, the judge found no evidence the contract was invalid or unenforceable. Thus, she ruled, "[T]he parties entered into a valid agreement to arbitrate claims arising out of or related to [AutoStone]'s performance pursuant to the March 14 [c]ontract."

The judge then analyzed whether the dispute fell within the scope of the March 14 contract. She reasoned that the underling dispute was AutoStone's performance pursuant to the contract and Butler Nissan alleged dissatisfaction about the installation and products used. Thus, she concluded whether the construction lien was timely filed fell within the scope of the contract because the validity of the lien necessitated an evaluation of AutoStone's performance.

The judge also concluded AutoStone proved 1567 South Realty and Butler Nissan were alter egos and compelled the arbitration apply to 1567 South Realty

A-0935-19T2

because the companies operated at the same business address, had the same president and Butler Nissan failed to dispute the claim.

On November 1, 2019, plaintiffs filed a notice of appeal. On February 12, 2020, the motion judge granted plaintiffs' request to stay arbitration pending appeal.

I

Plaintiffs argue the arbitration provision is unenforceable because it failed to advise Butler Nissan that its statutory rights were being waived. Specifically, plaintiffs contend Atalese[2] applies to this case. They further assert the judge failed to analyze the facts under the CFA.

We apply a de novo standard of review when reviewing a motion judge's determination of the enforceability of a contract. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207, 208 (2019). When reviewing arbitration clauses within contracts, "the enforceability of arbitration provisions is a question of law; therefore, it is one to which we need not give deference to the analysis by the trial court." Ibid.

The Federal and New Jersey Arbitration Acts express a general policy favoring arbitration. Atalese, 219 N.J. at 440; see also 9 U.S.C. §§ 1 to 16;

---

[2] Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430 (2014).

N.J.S.A. 2A:23B-1 to - 32. "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015). Although enforcement is generally favored, it "does not mean that every arbitration clause, however phrased, will be enforceable." Atalese, 219 N.J. at 441.

A valid arbitration clause "must state its purpose clearly and unambiguously." Id. at 435. Further, an arbitration agreement "must be the product of mutual assent," which "requires that the parties have an understanding of the terms to which they have agreed." Id. at 442 (quoting NAACP of Camden Cty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 424 (App. Div. 2011)). Our Supreme Court clearly set forth that a party "cannot be required to arbitrate when it cannot fairly be ascertained from the contract's language that [he or] she knowingly assented to the provision's terms or knew that arbitration was the exclusive forum for dispute resolution." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 322 (2019).

We reject plaintiffs' contention that Atalese applies here and controls the outcome of this case. Atalese arose in the context of a consumer fraud action, involving an average member of the public. The Court observed that "[b]y its very nature, an agreement to arbitrate involves a waiver of a party's right to have

her claims and defenses litigated in court."  219 N.J at 442.  Nevertheless, "an average member of the public may not know – without some explanatory comment – that arbitration is a substitute for the right to have one's claim adjudicated in a court of law."  Ibid.

The Court found the arbitration provision in Atalese deficient and unenforceable because it: 1) did not include any explanation that the plaintiff was waiving her right to seek relief in court; 2) did not explain what arbitration is or how it differs from seeking judicial relief; and 3) lacked the plain language necessary to convey to the average consumer that he or she is waiving the right to sue in court.  Id. at 446.

The Court held, "The absence of any language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable."  Id. at 436.  Here, we acknowledge there is no language explaining what arbitration is and how it serves as a replacement for judicial relief.  The language of the provision does not convey that plaintiff is waving a constitutional right to seek relief in a court of law.  While the language required in Atalese to satisfy one's knowing waiver of a basic right may be simple in its words, it is crucial in its significance.  Without a reference to a waiver of a right, we recognize an average consumer cannot know with

7                                          A-0935-19T2

certainty "that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Id. at 442.

However, plaintiffs are not average consumers and the contract was not a "consumer contract of adhesion where one party possessed superior bargaining power and was the more sophisticated party[,]" Delta Funding Corp. v. Harris, 189 N.J. 28, 40 (2006); instead, it was a negotiated contract between sophisticated business entities. Neither party here is an average member of the public. Plaintiffs are sophisticated enough to operate a car dealership, an LLC, and negotiate contracts with customers on a daily basis. We therefore find the heightened standard of Atalese does not apply here. Additionally, the arbitration provision states the arbitration would be conducted under a specified set of rules, the AAA, which sophisticated parties could consult if needed. See GAR Disability Advocates, LLC v. Taylor, 365 F. Supp. 3d 522, 531(D. N.J. 2019) (discussing commercial entities entering into a contract and concluding that plaintiff's assertion that Atalese applied was misplaced because the parties were both sophisticated and not average consumers).

The judge found a valid arbitration agreement pursuant to Roman because both parties were sophisticated with equal bargaining power and executed a contract at "arms-length." The judge then evaluated the arbitration provision

A-0935-19T2

and found plaintiffs did not allege any fraud, duress or coercion. She similarly found there was no evidence that the contract was not negotiated, or the arbitration agreement was inconspicuous. Therefore, she ruled the provision must be enforced. We agree with the judge and see no reason to disturb her conclusions of law or fact.

Plaintiffs additionally argue the dispute at issue is outside the scope of the arbitration provision, asserting it applies only to disputes arising from "AutoStone's performance under this contract." Specifically, plaintiffs contend AutoStone's construction lien falls outside of the scope of the arbitration agreement and the terms of the agreement are ambiguous.

"A court must look to the language of the arbitration clause to establish its boundaries. Importantly, 'a court may not rewrite a contract to broaden the scope of arbitration.'" Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 188 (2013) (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)). Arbitrability of a particular claim "depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause." Wasserstein v. Kovatch, 261 N.J. Super. 277, 286 (App. Div. 1993) (quotation marks and citations omitted).

At the same time, arbitration "is a favored means of dispute resolution." Cole v. Jersey City Med. Ctr., 215 N.J. 265, 276 (2013) (quoting Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006)), and that New Jersey courts have a "strong preference to enforce arbitration agreements . . . ." Hirsch, 215 N.J. at 186. "Because of the favored status afforded to arbitration, '[a]n agreement to arbitrate should be read liberally in favor of arbitration.'" Garfinkel, 168 N.J. at 132 (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)). "[U]nless the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, the matter is arbitrable[.]" Amalgamated Transit Union, Local 880 v. N.J. Transit Bus Operations, Inc., 200 N.J. 105, 125 (2009) (citations and quotation marks omitted).

The motion judge relied on Griffen v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010), and interpreted the arbitration provision broadly. She found the construction lien fell within the scope of the arbitration provision because the validity of the lien necessitated an evaluation of defendant's performance pursuant to the March 14 contract. AutoStone filed a construction lien because Butler Nissan failed to pay its remaining balance under the contract, after claiming AutoStone's workmanship was defective. The contract is the underlying issue, and but for Butler Nissan failing to pay,

AutoStone would not have filed the construction lien. We find no error in the motion judge's reasoning.

Additionally, plaintiffs cite to <u>Malick v. Seaview Lincoln Mercury</u>, 398 N.J. Super. 182, 187 (App. Div. 2008) to support their proposition that "AutoStone's performance" is ambiguous and therefore its meaning should be interpreted against it as the drafter of the contract. However, <u>Malick</u> concerned a high-low agreement between two parties during a personal injury trial. While the proposition itself can be applied generally, the facts of the <u>Malick</u> case have no relation to the facts here. The express words of the arbitration provision state, "If a controversy or dispute arises out of or related to AutoStone's performance under this Contract . . ." AutoStone's performance is not ambiguous as the construction lien was filed in relation to its alleged inadequate performance.

II

Plaintiffs further argue the judge improperly ignored the corporate forms of both Butler Nissan and 1567 South Realty in order to find 1567 South Realty bound by the arbitration provision of the contract. Specifically, plaintiffs argue the judge finding common ownership, common management and common place of business is not enough to support piercing the corporate veil. Plaintiffs assert

A-0935-19T2

AutoStone failed to present any evidence to suggest that "disregarding the corporate form was necessary to prevent fraud or injustice."

Since arbitration agreements are treated as contracts, the general rule is that only contractual parties are required to arbitrate disputes pursuant to the agreement. See Livadas v. Bradshaw, 512 U.S. 107, 127 (1994) ("[E]nforcement [of an arbitration agreement] turns exclusively on the fact that the contracting parties consented to any arbitration at all."); see also Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 526-27 (3d Cir. 2009). There are several exceptions wherein a non-signatory may compel or may be compelled to arbitrate a dispute notwithstanding the fact that it did not sign the arbitration agreement. See generally Jansen v. Salomon Smith Barney, Inc., 342 N.J. Super. 254, 259-60 (App. Div. 2001). The exceptions are rooted in contract and agency law and include: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; 5) equitable estoppel/third-party beneficiary; and 6) assignment/succession. See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009).

The burden of proof is on the party seeking to pierce the corporate veil. Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc., 195 N.J. 457, 472 (2008); Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160,

12

199 (App. Div. 2006).  That burden is by clear and convincing evidence.  See United Food & Commercial Workers Union v. Fleming Foods E., Inc., 105 F. Supp. 2d 379, 388 (D.N.J. 2000)

In order to warrant finding an alter ego of a parent corporation, a party must establish two elements: 1) that the subsidiary was dominated by the parent corporation, and 2) that adherence to the fiction of separate corporate existence would perpetrate a fraud or injustice, or otherwise circumvent the law.  State Department of Environmental Protection v. Ventron Corp., 94 N.J. 473, 500-01 (1983).  In determining whether the first element has been satisfied, courts consider whether "the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent."  Id. at 501; See Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 215 F. Supp. 2d 482, 497 (D.N.J. 2002) ("veil-piercing is proper when a subsidiary is an alter ego or instrumentality of the parent corporation.").  In determining corporate dominance, courts engage in a fact-specific inquiry considering whether the subsidiary was grossly undercapitalized, the day-to-day involvement of the parent's directors, officers and personnel, and whether the subsidiary fails to observe corporate formalities, pays no dividends, is insolvent, lacks corporate records, or is merely a facade.

A-0935-19T2

Bd. of Trs. v. Foodtown, Inc., 296 F.3d 164, 172 (3d Cir.2002); Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 610 (D.N.J.2004).

Plaintiffs rely on Ventron and argue AutoStone failed to meet its burden of establishing 1567 South Realty constitutes an alter ego of Butler Nissan. In Ventron, our Supreme Court explained the "purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." If that purpose would be served, "courts may pierce the corporate veil by finding that a subsidiary was a mere instrumentality of the parent corporation." Ibid. (internal quotations and citation omitted).

Here, the motion judge found that Butler Nissan and 1567 South Realty operate at the same business address with the same president. The judge found that plaintiffs failed to dispute the alter ego claim; therefore, she compelled the arbitration to apply to 1567 South Realty as an alter ego. The record supports this finding as undisputed. We note that the relevant evidence that would have defeated Autostone's alter ego claim would have been readily available to plaintiffs, if such evidence existed. Having come forward with none, plaintiffs failed to provide the court with any basis to reject Autostone's alter ego claim. Based on this record, which also reflects that plaintiffs have shared the same

14

attorney, we discern no reason to disturb the motion judge's ruling on the alter ego issue.

## III

Lastly, plaintiffs argue that AutoStone's construction lien claim is "based on New Jersey law and may be asserted only in the [c]ourts of New Jersey." This argument lack merit.

A forum selection clause in a contract is enforceable unless: 1) it is a result of "fraud, undue influence, or overweening bargaining power;" 2) it violates "a strong public policy;" or 3) enforcement would be seriously inconvenient for the trial. Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc., 146 N.J. 176, 186-88 (1996) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10-15 (1972)).

The terms of the forum selection clause are clear and unambiguous. Those terms must be "given their 'plain and ordinary meaning.'" Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 283 (D.N.J. 1992)).

The contract under review contained a venue clause stating, "The law of the State of Texas Shall govern this Contract, with venue to be in any court of competent jurisdiction in Dallas County, Texas." Texas is an appropriate venue

A-0935-19T2

because AutoStone's headquarters is there. Plaintiffs could have insisted upon a revision of the venue location during contract negotiations: alternatively, plaintiffs could have chosen a contractor with headquarters in New Jersey or elsewhere. We find no basis to disturb the judge's determination finding the venue provision enforceable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-0935-19T2