**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2800
_____

SCION HOTELS LLC,
                                        Appellant

v.

HOLIDAY HOSPITALITY FRANCHISING LLC
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2:21-cv-02276)
District Judge: Honorable Julien X. Neals
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 16, 2025

Before: CHAGARES, *Chief Judge*; MONTGOMERY-REEVES, and McKEE, *Circuit Judges*.

(Opinion filed: July 31, 2025)
_____

OPINION*
_____

MONTGOMERY-REEVES, *Circuit Judge*.

        This appeal concerns a dispute between a franchisor and a franchisee and the

District Court's determination that the franchisor permissibly decided not to renew a

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

franchise agreement under the New Jersey Franchise Practices Act ("NJFPA"). For the reasons set forth in this Opinion, we will affirm in part and vacate and remand in part.

I. BACKGROUND[1]

In June 2019, Scion Hotels LLC ("Scion") purchased a Holiday Inn hotel in the Newark Airport market from an owner in an existing franchise agreement with franchisor Holiday Hospitality Franchising LLC ("HHF"). When HHF learned about the sale, it offered Scion a long-term franchise agreement. But Scion was not ready to sign a long-term agreement, so the parties agreed to franchise the hotel as a Holiday Inn until April 2021 (the "Franchise Agreement").

The Franchise Agreement contained two provisions relevant to this appeal. First, the Franchise Agreement provided that it was "non-renewable" and "confer[red] . . . absolutely no rights of license renewal or extension whatsoever" after April 2021 (the "non-renewal" provision). Joint Appendix (hereinafter "App.") 1107. And second, the Franchise Agreement prohibited Scion from "further[ing], promot[ing], or divert[ing] business to a competing business." App. 1061.

After entering the Franchise Agreement, both parties entered contracts with separate third parties. In October 2019, HHF agreed to open a competing Holiday Inn in the Newark Airport market, which opened in December 2019. And in November 2020, Scion agreed to convert its property into a Hampton Inn (the "Hilton Agreement")[2] at the

---

[1] We recite only uncontested facts necessary to contextualize this appeal. Relevant disputes of material fact will be addressed where applicable later in this Opinion.

[2] The Hampton Inn is one of Hilton Worldwide's ("Hilton") hotel brands.

completion of the Franchise Agreement. The Hilton Agreement contemplated that renovations on Scion's property would begin in March 2021. In April 2021, Scion stopped operating its property as a Holiday Inn. In late-May 2022, it reopened as a Hampton Inn.

Scion initiated this litigation in February 2021 contending that HHF impermissibly refused to renew the Franchise Agreement, forcing its hand in entering the Hilton Agreement, to its financial detriment. The operative complaint alleges three Counts as a result: (1) wrongful non-renewal under the NJFPA ("Count One"); (2) constructive termination under the NJFPA ("Count Two"); and (3) unreasonable standards of performance under the NJFPA ("Count Three"). HHF moved for summary judgment, which the District Court granted. Scion timely appealed.

## II. DISCUSSION[3]

On appeal, Scion contends that the District Court erred by weighing the evidence and granting summary judgment for Scion on all Counts and by holding that Scion could not obtain damages if successful. HHF contends that a "non-renewal" provision in the Franchise Agreement forecloses Scion's claims and that the District Court did not err in any of its holdings.

We agree with Scion that: (1) the "non-renewal" provision is inoperative; and (2) the District Court erred in granting summary judgment for HHF on Count One and

---

[3] The District Court had jurisdiction over this case under 28 U.S.C. § 1332. We have jurisdiction over this appeal under 28 U.S.C. § 1291. We review de novo a district court's decision granting summary judgment. *Glaesener v. Port Auth. of N.Y. & N.J.*, 121 F.4th 465, 467 (3d Cir. 2024) (citing *Tundo v. Cnty. of Passaic*, 923 F.3d 283, 286–87 (3d

3

the damages issue.  But we disagree that the District Court erred in granting summary judgment on Counts Two and Three.

### A.     The "Non-Renewal" Provision

We begin our analysis with a threshold question: whether the "non-renewal" provision is valid and enforceable.  If it is, then the provision would foreclose all of Scion's claims.

The Franchise Agreement's "non-renewal" provision is not enforceable because it impermissibly operates as a release.  Specifically, the NJFPA forbids franchisors from requiring franchisees to assent to releases that "relieve any person from liability imposed by [the] act." N.J. Stat. Ann. § 56:10-7.  Here, if enforced the "non-renewal" provision would relieve HHF from liability under the NJFPA by vitiating the statute's requirement that a franchisor renew a franchisee's franchise agreement or show "good cause" for the nonrenewal.  N.J. Stat. Ann. § 56:10-5; *see also Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 319 (3d Cir. 2001) ("Even if the terms of a private franchise agreement permit termination at will, § 56:10–5's good cause requirement will supersede that arrangement and impose a good cause requirement on the franchisor's decision.").  The provision therefore is superseded by the NJFPA, and we will disregard it as unenforceable.  *See Gen. Motors*, 263 F.3d at 319; *Roman v. Bergen Logistics, LLC*,

---

Cir. 2019)).  "Summary judgment is appropriate only 'if, when viewed in the light most favorable to the [nonmoving party], there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 221 (3d Cir. 2024) (alteration in original) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003)).

192 A.3d 1029, 1037 (N.J. Super. Ct. App. Div. 2018) (recognizing that under New Jersey law if a contractual term violates the law, it will be disregarded (quoting *Naseef v. Cord, Inc.*, 216 A.2d 413, 418 (N.J. Super. Ct. App. Div. 1966)).

### B.      Count One—Wrongful Nonrenewal

As to Count One, Scion contends that the District Court erroneously granted summary judgment for HHF because there is a genuine dispute of material fact regarding whether HHF had "good cause" to refuse renewing the Franchise Agreement under N.J. Stat. Ann. § 56:10-5.  The District Court concluded that good cause existed after finding, *sua sponte*, that Scion "failed to substantially comply with the Franchise Agreement" when Scion "entered the [Hilton Agreement], which conflicted with [Scion's] duties under the Franchise Agreement."  App. 14.  The District Court erred in granting HHF summary judgment on this basis.

The NJFPA does not mince words; it aims to protect franchisees from unreasonable franchisor agreement terminations.  N.J. Stat. Ann. § 56:10-2 ("It is . . . necessary in the public interest . . . to protect franchisees from unreasonable termination by franchisors.").  In this spirit, § 56:10-5 provides that it is a "violation" of the NJFPA "for any franchisor directly or indirectly through any officer, agent, or employee" to "fail to renew a franchise" without "having first given written notice setting forth all the reasons for such" nonrenewal.  N.J. Stat. Ann. § 56:10-5.  The statute further specifies that "[i]t shall be a violation of" the NJFPA "for a franchisor to . . . fail to renew a franchise without good cause."  *Id.*  "Good cause" is defined as a "failure by the

5

franchisee to substantially comply with [the] requirements imposed upon him by the franchise." *Id.*

The New Jersey Supreme Court has held that "[t]he plain meaning of the [above] language, supported by the legislative history, sharply curtails a franchisor's right to end the franchise in the absence of a breach by the franchisee." *Westfield Ctr. Serv. v. Cities Serv. Oil Co.*, 432 A.2d 48, 55 (N.J. 1981). From this, the New Jersey Supreme Court held that "a franchisor who in good faith and for a bona fide reason . . . fails to renew a franchise for any reason *other than* the franchisee's substantial breach of its obligations has violated N.J. Stat. Ann. [§] 56:10-5 and is liable to the franchisee." *Id.* at 57. We have understood a "substantial breach" under the NJFPA to be no different from the common law concept of a material breach. *Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 631 (3d Cir. 2024) (explaining that the NJFPA's "good-cause standard is similar to the legal concept of material breach"); *accord Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp.*, 495 A.2d 66, 74–75 (N.J. 1985) (concluding in the context of Section 56:10-5 that "a material breach of contract" entitled a franchisor to terminate a franchise). Thus, for HHF to succeed at summary judgment, it must show that there is no genuine dispute of material fact that Scion substantially or materially breached its obligations under the Franchise Agreement.

HHF did not meet this burden, and the District Court should have denied HHF's motion for summary judgment on Count One. Specifically, the District Court erred in concluding that Scion's "actions demonstrate[d] a lack of substantial compliance" with the Franchise Agreement where Scion voluntarily abandoned "the franchise relationship

6

by actively pursuing a rival franchise relationship with Hilton." App. 31. We agree with the District Court that courts have recognized that undisputed evidence of a franchisee "acting in direct defiance" of an active franchise agreement, *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 91 F. Supp. 2d 733, 740 (D.N.J. 2000), or "operat[ing]" for another franchise in violation of a franchise agreement's express terms, *Maple Shade Motor Corp. v. Kia Motors of Am., Inc.*, 384 F. Supp. 2d 770, 775 (D.N.J. 2005), provide "good cause" to terminate a franchisor/franchisee relationship as a matter of law.[4] But these examples are not this case because the record does not indisputably establish that Scion operated its business for another franchise or that it directly defied the Franchise Agreement in violation of the Franchise Agreement's express terms.[5]

Instead, Scion submitted evidence that it only operated another franchise *after* the Franchise Agreement concluded, and that Scion only contractually agreed to begin

---

[4] *New A.C. Chevrolet*, 91 F. Supp. 2d at 740 (finding that "direct defiance of a term of the agreement" can constitute "good cause" to decline renewing a franchise); *Westfield*, 432 A.2d at 57 ("[A] franchisor who in good faith and for a bona fide reason . . . fails to renew a franchise for any reason *other than* the franchisee's substantial breach of its obligations has violated N.J. Stat. Ann. [§] 56:10-5 and is liable to the franchisee." (emphasis added)).

[5] In fact, the District Court never identified a provision of the Franchise Agreement that was breached, further separating relevant cited law from applicability to the District Court's analysis. Op. 12–16 (identifying no specific term of the Franchise Agreement that Scion failed to comply with while recognizing that substantial compliance "requires that the franchisee refrain from acting in direct defiance of a *term* of the agreement" (quoting *Red Roof Franchising, LLC v. Patel*, 877 F. Supp. 2d 124, 138 (D.N.J. 2012)). It is only in HHF's appellate briefing that we are directed to Paragraph 3 of the Franchise Agreement, which provides, in part, that Scion cannot "further, promote, or divert business to a competing business." HHF on appeal contends that this contractual language is what Scion failed to substantially comply with.

renovations during the Franchise Agreement but did not actually defy the Franchise Agreement and do so. This conduct is distinct from actually *operating* a competing franchise in express violation of a contractual term, or otherwise defying the terms of the Franchise Agreement generally. *Cf. Maple Shade*, 384 F. Supp. 2d at 775 (finding that a Kia franchisee impermissibly "operated" as a Mazda dealer where it failed to build a contractually-required separate showroom for Kia vehicles and instead intermixed Kia and Mazda vehicles in a singular showroom for public display). It is for a jury to decide whether Scion negotiating with Hilton or agreeing to begin renovations in March 2021, but not actually doing so, constituted substantial noncompliance or a material breach. *Net 2 Funds, LLC v. Hartz Mountain Indus.*, No. 23-15T1, 2018 WL 2122723, at *3–4 (N.J. Super. Ct. App. Div. May 9, 2018) ("[W]hether a party breached [an] agreement" and whether that breach was material is "a question for the factfinder, not the court." (quoting *Murphy v. Implicito*, 920 A.2d 678, 689–90 (N.J. Super. Ct. App. Div. 2007)). Thus, we will vacate and remand Count One.

### C. Count Two—Constructive Termination

As to Count Two, Scion contends that HHF constructively terminated the Franchise Agreement by entering into a franchise agreement with a separate hotel and destroying Scion's exclusivity in the Newark Airport market. To this end, Scion maintains that it "presented evidence that HHF both intended to cease doing business with Scion and that HHF's actions benefited the [competing hotel] to Scion's detriment." Opening Br. 34. The District Court granted summary judgment in HHF's favor on this

Count, holding that the evidence Scion provided could not support a constructive termination claim. We agree.

New Jersey courts have recognized that a constructive termination claim is viable under § 56:10-5. *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am. Inc.*, 975 A.2d 510, 520 (N.J. Super. Ct. App. Div. 2009) (noting that the statute itself makes clear that the NJFPA "prohibits a franchisor from 'indirectly' terminating a franchise without good cause" (quoting N.J. Stat. Ann. § 56:10-5)). Specifically, they have: (1) held that the loss of exclusivity in a given market can constitute constructive termination "in and of itself" if a franchisee enjoys "a contractual right of exclusivity," *id.* at 520–21; and (2) credited the Second Circuit's determination that a franchisee can show a constructive termination if exclusivity destruction is accompanied by an intent to "undermine [a franchisee's business]" or "result[s] in a *substantial decline* in franchisee net income." *Id.* (quoting *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1183 (2d Cir. 1995)).

Scion failed to provide evidence of contractual exclusivity, an intent to undermine, or a substantial decline in net income. First, the Franchise Agreement did not provide Scion a "contractual right to exclusivity;" to the contrary, it "grant[ed] to [Scion] a non-exclusive license" to use the Holiday Inn brand at its hotel in the Newark Airport market. App. 1107. Second, Scion provided no non-speculative evidence that it suffered a

9

substantial decline in net income[6] or that HHF intended to undermine Scion in agreeing to convert a rival hotel into a Holiday Inn. Thus, we will affirm on Count Two.

### D. Count Three—Unreasonable Standards of Performance

As to Count Three, Scion contends that it was held to an "unreasonable standard of performance" because it was "set [] up for failure" when HHF introduced another Holiday Inn into the market, resulting in non-renewal. The District Court held, however, that there is no evidence in the record that HHF "acted arbitrarily, in bad faith[,] [or] with an intent to impose economic ruin" upon Scion. App. 22. In particular, the District Court found that there is no evidence that HHF's own negotiations with the competing hotel or its treatment of Scion were "in bad faith" or otherwise purposefully damaging to Scion; instead, the evidence showed only measured business decisions resulting in alleged harm. *See* App. 23–24. We agree with the District Court.

Section 56:10-7(e) provides that "[i]t shall be a violation of this act for any franchisor, directly or indirectly . . . [t]o impose unreasonable standards of performance upon a franchisee," resulting in harm. The parties agree that the hallmarks of an "unreasonable standards" claim are "arbitrariness, bad intent[,] or economic ruin." *King v.*

---

[6] Scion suggests that it "showed" an "immediate loss of revenue" after the competing Holiday Inn began operating in December 2019. In so contending, it cites one line in its CEO's declaration stating, "we suffered an immediate decline in revenue and guests." App. 828. This lone declaration is conclusory and not sufficient to survive summary judgment. *Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018) (holding that only "a single, *non*-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment" (quoting *Lupyan v. Corinthian Colls., Inc.*, 761 F.3d 314, 320, 321 n.2 (3d Cir. 2014) (emphasis added))).

10

*GNC Franchising, Inc.*, No. 04-5125, 2006 WL 3019551, at \*5 (D.N.J. Oct. 23, 2006). But we need not reach these hallmarks because it is undisputed that Scion "did not default" under the Franchise Agreement and that Scion did not suffer harm as a result of failing to perform under the Franchise Agreement—HHF never asserts that it declined to renew the Franchise Agreement because Scion failed to perform under the Franchise Agreement. Thus, an "unreasonable standards of performance" claim is facially inapplicable under the plain meaning of the statutory language. We will, therefore, affirm on Count Three.

### E.    Damages

Finally, the District Court held that Scion "failed to present evidence that [it] suffered damages" because any "damages alleged are not attributable to [HHF]" but instead were "a direct result of [Scion's] obligations" under the "conflicting" Hilton Agreement. App. 26. This damages conclusion by the District Court was in error.

If Scion can succeed on Count One, then HHF may be liable for costs Scion incurred resulting from HHF's nonrenewal. *Westfield*, 432 A.2d at 57 ("[A] franchisor who . . . fails to renew a franchise for any reason *other than* the franchisee's substantial breach of its obligations has violated N.J. Stat. Ann. [§] 56:10-5 and is liable to the franchisee. . . ." (emphasis added)). Thus, we will vacate the District Court's damages finding.

## III. CONCLUSION

For the reasons set forth above, we will vacate and remand the District Court's order as to Count One and the accompanying damages determination. We will affirm the District Court's order as to Counts Two and Three.