**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5388-16T3

MILAGROS ROMAN,

    Plaintiff-Appellant,

v.

BERGEN LOGISTICS, LLC and
GREGG OLIVER,

    Defendants-Respondents.

_____

Argued February 5, 2018 — Decided August 23, 2018

Before Judges Accurso, O'Connor and Vernoia.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Docket No.
L-2652-17.

Peter D. Valenzano argued the cause for
appellant (Mashel Law, LLC, attorneys; Stephan
T. Mashel, of counsel and on the briefs; Peter
D. Valenzano, on the briefs).

Jessica L. Sussman argued the cause for
respondent Bergen Logistics, LLC (Jackson
Lewis PC, attorneys; Richard J. Cino, of
counsel; Jessica L. Sussman, on the brief).

Kyle L. Wu argued the cause for respondent
Gregg Oliver (Margolis Edelstein, attorneys;
Michael R. Miller and Kyle L. Wu, of counsel
and on the brief).

Thaddeus P. Mikulski, Jr., attorney for amicus curiae National Employment Lawyers Association of New Jersey, Inc. (Thaddeus P. Mikulski, Jr. and Richard M. Schall, on the brief).

PER CURIAM

Plaintiff Milagros Roman appeals from an order dismissing her sexual harassment and retaliation complaint against defendants Bergen Logistics, LLC and Gregg Oliver. Because we are convinced the court correctly determined the complaint should be dismissed because plaintiff agreed to arbitrate her claims, we affirm but modify the court's order to permit plaintiff to pursue her punitive damages claims in arbitration.

## I.

In September 2015, Bergen Logistics hired plaintiff as a human resources generalist. Oliver was Bergen Logistics's Human Resources Director and plaintiff's immediate supervisor. He terminated plaintiff's employment on December 30, 2015.

In an April 2017 Law Division complaint, plaintiff alleged Oliver sexually harassed her and created a sexually hostile work environment during her employment. She also alleged that after she objected to his conduct and sexual advances, he retaliated against her and terminated her employment. She asserted causes of action against Bergen Logistics and Oliver under the New Jersey

Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, and for intentional infliction of emotional distress.

Defendants moved to dismiss the complaint, asserting plaintiff was obligated to arbitrate her claims pursuant to the arbitration agreement she signed when hired in September 2015. In support of their motion, defendants relied on the agreement, which refers to plaintiff as "you" and Bergen Logistics as the "Company, and provides in pertinent part that "[a]s an express condition of" plaintiff's "hiring" and "continu[ed]" employment by Bergen Logistics she agreed:

> (i) all (past, present and future) disputes, controversies and claims of any nature (whether under federal, state or local laws and whether based on contract, tort, common law, statute . . .) arising out of, involving, affecting or related in any way to your . . . employment . . . and/or termination of employment by or from Company, the conditions of your employment, or any act or omission of Company or Company's other employees shall be resolved exclusively by final and binding arbitration before the American Arbitration Association . . . . This Agreement covers all employment matters, including but not limited to matters directly or indirectly related to wrongful termination, . . . discrimination, harassment, retaliation (in the whistle blower or any other context), . . . and any other violation of state, federal or common law . . . .
>
> . . . .
>
> (iii) neither you nor Company shall file or maintain any lawsuit, action or legal

3                                                                 A-5388-16T3

proceeding of any nature with respect to any dispute, controversy or claim within the scope of this Agreement, including, but not limited to, any lawsuit, action or legal proceeding challenging the arbitrability of any such dispute . . . . BY SIGNING THIS AGREEMENT YOU AND COMPANY ARE WAIVING ANY RIGHT, STATUTORY OR OTHERWISE, TO A TRIAL BY JURY AND TO PUNITIVE AND EXEMPLARY DAMAGES . . . .

. . . .

YOU ACKNOWLEDGE AND AGREE THAT YOU . . . READ THIS AGREEMENT AND . . . HAD SUFFICIENT TIME TO STUDY AND CONSIDER IT AND TO CONSULT WITH COUNSEL OF YOUR CHOICE, THAT YOU UNDERSTAND ALL OF ITS TERMS AND ARE SIGNING THIS AGREEMENT KNOWINGLY AND VOLUNTARILY, AND THAT IN DOING SO YOUR ARE NOT RELYING UPON ANY OTHER STATEMENTS OR REPRESENTATIONS BY THE COMPANY, ITS AFFILIATE OR THEIR EMPLOYEES OR AGENTS . . . .

Plaintiff opposed the motion, arguing the agreement was unenforceable as against public policy because it barred her recovery of punitive damages otherwise available under the LAD. See N.J.S.A. 10:5-3 (providing for the recovery of punitive damages for LAD claims). Plaintiff also asserted the agreement was unenforceable because she was unable to read it when it was presented, it was not written in plain language and she did not read it before signing it.

After hearing argument, the court issued a written opinion finding plaintiff knowingly signed the agreement, and that it contained an unambiguous waiver of claims for "punitive and

4

exemplary damages."[1]  The court found plaintiff's hiring and continued employment provided consideration for the agreement, which covered the claims asserted in the complaint, was binding and required submission of her claims to arbitration.  The court entered an order dismissing the complaint.  This appeal followed.

II.

Plaintiff first contends the court erred by dismissing the complaint because the arbitration agreement's punitive damages waiver violates the public policy underlying the LAD, thereby rendering the agreement unenforceable.[2]  Bergen Logistics and Oliver contend punitive damages waivers do not violate public policy and therefore there is no basis to void plaintiff's obligation to arbitrate her claims under the agreement's plain language.

We review the court's order dismissing the complaint de novo because it is founded on a determination of a question of law - the validity of the arbitration agreement.  Barr v. Bishop Rosen

---

[1]  We note that although the arbitration agreement refers to "punitive and exemplary damages," the two are one and the same. See Fischer v. Johns-Manville Corp., 103 N.J. 643, 654 (1986) (referring to punitive damages and exemplary damages interchangeably); Restatement (Second) of Torts § 908(1) (Am. Law Inst. 1979) (noting that punitive damages are frequently called "exemplary" damages).

[2]  Amicus curiae, National Employment Lawyers Association of New Jersey, Inc., make the same argument.

& Co., Inc., 442 N.J. Super. 599, 605 (App. Div. 2015). "Our review of a contract, generally, is de novo, and therefore we owe no special deference to the trial court's . . . interpretation. Our approach in construing an arbitration provision of a contract is governed by the same de novo standard of review." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014) (citations omitted).

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16, and the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -32, reflect federal and state policies favoring arbitration of disputes. Roach v. BM Motoring, LLC, 228 N.J. 163, 173-74 (2017); Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). The FAA was enacted "to 'reverse the longstanding judicial hostility' towards arbitration agreements and to 'place arbitration agreements upon the same footing as other contracts,'" Roach, 228 N.J. at 173 (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)), and "preempts state laws that single out and invalidate arbitration agreements," id. at 174 (citing Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996)). A court "'cannot subject an arbitration agreement to more burdensome requirements than' other contractual provisions." Ibid. (quoting Atalese, 219 N.J. at 441).

"The preference for arbitration 'is not without limits,'" Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 187 (2013) (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132 (2001)), and "[t]he right of freedom to contract 'is not such an immutable doctrine as to admit of no qualification,'" Rodriguez v. Raymours Furniture Co., Inc., 225 N.J. 343, 361 (2016) (quoting Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 388 (1960)). "[S]tate contract-law principles generally govern a determination whether a valid agreement to arbitrate exists." Hojnowski, 187 N.J. at 342. Thus, "[a]n arbitration clause may be invalidated 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Martindale v. Sandvick, Inc., 173 N.J. 76, 85 (2002); see also Morgan v. Sanford Brown Inst., 225 N.J. 289, 303-04 (2016) ("Under the FAA, an arbitration agreement, like any contract, may be held invalid 'upon such grounds as exist at law or in equity for the revocation of any contract.'"); Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (quoting Casarotto, 517 U.S. at 687) (finding arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability'").

Our courts have "recognize[d] that an individual may agree by contract to submit his or her statutory LAD claim to alternative

dispute resolution and therefore different processes," Rodriquez, 225 N.J. at 364, and applied state contract law principles in enforcing agreements requiring arbitration of employment-related claims, see, e.g., Martindale, 173 N.J. at 91-92 (finding an arbitration agreement in an employment application constitutes a binding contractual obligation); Young v. Prudential Ins. Co. of Am., Inc., 297 N.J. Super. 605, 618 (App. Div. 1997) (enforcing an agreement to arbitrate LAD claims and claims arising under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14).

Applying contract principles, our courts have also determined agreements otherwise requiring arbitration of employment-related claims are unenforceable. See, e.g., Leodori v. Cigna Corp., 175 N.J. 293, 302-07 (2003) (finding an arbitration requirement in an employee handbook was not binding because there was no evidence the plaintiff consented to it); Garfinkel, 168 N.J. at 132-36 (finding an arbitration agreement too ambiguous to constitute a binding contractual obligation waiving the right to a trial by jury); Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super 252, 270-73 (App. Div. 2000) (finding an arbitration agreement unenforceable as to the plaintiff's LAD claims because the contract did not clearly cover such claims).

In Rodriquez, the Court determined an arbitration agreement provision requiring the filing of an employee's LAD claim within

six months of its accrual was unenforceable under general contract principles because it violated the public policy embodied in the LAD. 225 N.J. at 363-66. The Court noted that "the right of freedom to contract 'is not such an immutable doctrine as to admit of no qualification,'" and "[t]he right must recede to 'prevent its abuse, as otherwise it could be used to override all public interests.'" Id. at 361 (quoting Henningsen, 32 N.J. at 388).

The Court found the LAD "exists for the good of all the inhabitants of New Jersey," and is "imbued with a public-interest agenda" of eliminating discrimination. Ibid. Thus, the Court reasoned that a "contractual limitation on an individual's right to pursue and eradicate discrimination of any form prohibited under the LAD is not simply . . . a private matter," but instead "would curtail a claim designed to also further a public interest." Ibid. The Court found the two-year statute of limitations for the filing of a LAD claim recognized in Montells v. Haynes, 133 N.J. 282 (1993), has been tacitly approved by the Legislature, and is "woven . . . into the fabric of the LAD" and "part of the statutory program and how it operates." Id. at 362.

The Court observed that although an individual may agree by contract to submit his or her LAD claims to arbitration, "in permitting the submission of an LAD claim to an alternative forum by operation of contract, the contract is examined to determine

whether substantive rights have been precluded." Id. at 364. The Court determined the arbitration agreement requiring that LAD claims be filed within six months was unenforceable because it "is contrary to the public policy expressed in the LAD," ibid., "undermines the integrated nature of the statutory avenues of relief and the election of remedies available to victims of discrimination," id. at 362, and would "effectively eliminate[ ] claims,"[3] id. at 363; see also Van Duren v. Rzasa-Ormes, 394 N.J. Super. 254, 267-68 (App. Div. 2007) (finding an arbitration agreement provision foreclosing judicial review of an arbitration award void as against public policy).

Measured against the standard employed by the Court in Rodriguez, we are persuaded the arbitration agreement's bar of punitive damages claims under the LAD is unenforceable because it violates the public policy embodied in the LAD. Our Supreme Court has "long recognized that the essential purpose of the LAD is the

---

[3]  The Court also observed that "contracts, or discrete contract provisions," may be unenforceable because they are unconscionable. Id. at 366. However, the Court found it unnecessary to decide if the arbitration agreement's provision requiring that LAD claims be filed within six months was unconscionable because it otherwise violated public policy. Ibid. We similarly do not address whether the punitive damages bar under the arbitration agreement is unenforceable as unconscionable, see Muhammad, 189 N.J. at 15 (explaining the standard for determining whether an arbitration agreement is unenforceable as unconscionable), because we determine the provision is unenforceable because it violates public policy.

A-5388-16T3

'eradication of the cancer of discrimination.'" Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 258 (2010) (quoting Fuchilla v. Layman, 109 N.J. 319, 334 (1988)); accord Rodriquez, 225 N.J. at 361. The Court has "been vigilant in interpreting the LAD in accordance with that overarching purpose," Quinlan, 204 N.J. at 259, and "scrupulous in [its] insistence that the [LAD] be applied to the full extent of its facial coverage,'" ibid. (quoting Bergen Commercial Bank v. Sisler, 157 N.J. 188, 216 (1999)).

In 1990, the Legislature amended the LAD to permit the recovery of punitive damages. L. 1990, c. 12. The amendment includes an unambiguous declaration of public policy providing a substantive remedy to victims of discrimination: "[t]he Legislature intends that [punitive] damages be available to all persons protected by" the LAD. L. 1990, c. 12; N.J.S.A. 10:5-3.

"Awards of punitive damages [under the LAD] . . . serve particular purposes, which [the Court has] described as 'the deterrence of egregious misconduct and the punishment of the offender.'" Quinlan, 204 N.J. at 273 (quoting Herman v. Sunshine Chem. Specialties, Inc., 133 N.J. 329, 337-38 (1993)); see also Fischer, 103 N.J. at 657 (citation omitted) ("The doctrine of punitive damages survives because it continues to serve the useful purposes of expressing society's disapproval of intolerable conduct and deterring such conduct where no other remedy would

suffice."). Our Supreme Court "view[s] the . . . scope of an employer's liability for compensatory and punitive damages as a question of public policy," to be resolved in a manner "provid[ing] the most effective intervention and prevention of employment discrimination." Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 625 (1993).

The availability of punitive damages serves the LAD's public policy of eradicating employment discrimination by focusing on the deterrence and punishment of particularly serious discriminatory conduct by certain employees. See Fischer, 103 N.J. at 657 (noting that punitive damages "punish the wrongdoer" and "deter both the wrongdoer and others from similar conduct in the future"). Punitive damages may be awarded under the LAD only where there is "proof that there was 'actual participation by upper management or willful indifference,' and proof that the conduct was 'especially egregious.'" Quinlan, 204 N.J. at 274 (quoting Rendine v. Pantzer, 141 N.J. 292, 313-14 (1995)). "[F]or an employer to be held liable for punitive damages under the LAD, there must be some involvement by a member of the employer's upper management." Cavuoti v. N.J. Transit Corp., 161 N.J. 107, 117 (1999). The Court has defined those employees who may be properly considered to be in upper management, see id. at 128-29, and stated the "purpose of the definition of 'upper management' is to 'provid[e]

employers with the incentive not only to provide voluntary compliance programs'" directed at eliminating workplace discrimination, "but also to insist on the effective enforcement of their programs . . . [,]" id. at 128 (alteration in original) (quoting Lehmann, 131 N.J. at 626).

In our view, a contractual provision barring an employee's access to punitive damages under the LAD not only violates public policy by eliminating a remedy the Legislature expressly declared is available to all victims of discrimination under the statute, see Martindale, 173 N.J. at 93-94 (enforcing an agreement to arbitrate LAD claims in part because none of the plaintiff's substantive rights and remedies under the statute were affected); N.J.S.A. 10:5-3, it also eviscerates an essential element of the LAD's purpose — deterrence and punishment of the most egregious discriminatory conduct by employees who, by virtue of their position and responsibilities, see Cavuoti, 161 N.J. at 128-29 (providing the standards for inclusion in upper management), control employer policies and actions that should prevent discriminatory conduct in the workplace. An agreement barring the recovery of punitive damages to victims of employment discrimination under the LAD allows an employer's upper management to be willfully indifferent to the most egregious forms of discriminatory conduct without fear of punishment and without the

incentive to stop or prevent the discriminatory conduct that the availability of punitive is intended to provide. We find such a result is contrary to the public policy underlying the LAD — the eradication of discrimination — and therefore the arbitration agreement's bar to the recovery of punitive damages is unenforceable as against public policy. Rodriguez, 225 N.J. at 361; see also Estate of Anna Ruszala ex. rel. Mizerak v. Brookdale Living Cmtys., Inc., 415 N.J. Super. 272, 298-99 (App. Div. 2010) (finding an arbitration agreement provision precluding recovery of punitive damages otherwise available under the Nursing Home Responsibilities and Rights of Residents Act, N.J.S.A. 30:13-1 to -17, is "void and unenforceable under the doctrine of substantive unconscionability").

As we determined in Ruszala, where we found an arbitration agreement provision precluding the recovery of punitive damages unenforceable, "the remedy here is to enforce our federal policy in favor of arbitration, while excising . . . restrictions we have concluded are unenforceable." 415 N.J. Super. at 300; see also Muhammad, 189 N.J. at 26 (finding an arbitration agreement's class-arbitration waiver was unenforceable and severing the waiver provision). We reject plaintiff's claim that severance of the unenforceable provision barring recovery of punitive damages is not appropriate because the arbitration agreement does not

14                                                            A-5388-16T3

expressly provide for severance.  See, e.g., Muhammad, 189 N.J. at 26 (rejecting the argument that severance of an unenforceable contract provision was inappropriate in part because the agreement reflected an intention that the contract would be implemented without the unenforceable provision); Ruszala, 415 N.J. Super. at 300 (concluding severance of unenforceable contract provisions was appropriate "as provided for in the arbitration agreement").

"[I]f a contract contains an illegal provision, if such provision is severable [we] will enforce the remainder of the contract after excising the illegal position." Naseef v. Cord, Inc., 90 N.J. Super. 135, 143 (App. Div.), aff'd, 48 N.J. 317 (1966).  In Van Duren, 394 N.J. Super. at 268, the arbitration agreement did not address severability, but we nevertheless determined that an unenforceable provision barring judicial review of an arbitration award should be severed because "the agreement [was] otherwise valid and enforceable."  As the Third Circuit Court of Appeals stated in a similar context, "[y]ou don't cut down the trunk of a tree because some of its branches are sickly." Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 214 (3d Cir. 2003).

We are satisfied the unenforceable prohibition against the recovery of punitive damages should be severed from the otherwise valid agreement to arbitrate the claims asserted in the complaint.

The parties shall do so, however, without any limitation on plaintiff's right to recover punitive or exemplary damages.

## III.

Plaintiff next argues that even if the punitive damages waiver provision is valid or otherwise severable, the arbitration agreement is unenforceable because she did not knowingly and voluntarily enter into an agreement to arbitrate the claims asserted in the complaint. More particularly, she contends the arbitration agreement did not include a sufficiently clear waiver of her right to litigate her claims in court, her right to a jury trial and her right to punitive and exemplary damages. She also argues she did not knowingly waive any of her rights because she was not provided an opportunity to take the document home, did not have legal counsel, was not told she was giving up her right to proceed to court, and did not understand what the terms "punitive" and "exemplary" meant. Last, she claims she was entitled to a plenary hearing on her claim that she did not knowingly and voluntarily waive her rights by entering into the arbitration agreement.

An arbitration agreement, "like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" <u>Atalese</u>, 219 N.J. at 442 (citation omitted). "Mutual assent requires that the parties have an

16                                                                A-5388-16T3

understanding of the terms to which they have agreed." <u>Ibid.</u>

"This requirement of a 'consensual understanding' about the rights

of access to the courts that are waived in the agreement has led

our courts to hold that clarity is required." <u>Moore v. Woman to</u>

<u>Woman Obstetrics & Gynecology, L.L.C.</u>, 416 N.J. Super. 30, 37

(App. Div. 2010) (citation omitted).

"By its very nature, an agreement to arbitrate involves a

waiver of a party's right to have her claims and defenses litigated

in court." <u>Atalese</u>, 219 N.J. at 442 (citation omitted). However,

"an average member of the public may not know — without some

explanatory comment — that arbitration is a substitute for the

right to have one's claim adjudicated in a court of law." <u>Ibid.</u>

Plaintiff's claim that the agreement does not adequately

state she waived her right to proceed in court and to a jury trial

is undermined by the agreement's plain language. The agreement

states that plaintiff and Bergen Logistics agree not to "file or

maintain any lawsuit, action or legal proceeding of any nature

with respect to any dispute, controversy or claim within the scope

of [the] Agreement," and that "BY SIGNING [THE] AGREEMENT

[PLAINTIFF] AND THE COMPANY ARE WAIVING ANY RIGHT, STATUTORY OR

OTHERWISE TO A TRIAL BY JURY." The agreement also expressly states

that any covered claims "shall be resolved exclusively by final

and binding arbitration." In <u>Atalese</u>, the Court held "the absence

of _any_ language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable." _Id._ at 436. Here, the arbitration agreement informed plaintiff that the exclusive forum for resolution of her claims was arbitration, she was prohibited from filing any other lawsuits or legal proceedings and she waived her right to a trial by jury.

The Court in _Atalese_ provided "examples of language sufficient to meet these expectations." _Barr_, 442 N.J. Super. at 606. Our Supreme Court noted our decision in _Griffin v. Burlington Volkswagen, Inc._, 411 N.J. Super. 515, 518 (App. Div. 2010), where we "upheld an arbitration clause, which expressed that '[b]y agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes.'" _Atalese_, 219 N.J. at 445.

In _Atalese_, the Court also cited an arbitration clause stating "the plaintiff agreed 'to waive [her] right to a jury trial,'" and another where the arbitration clause stated: "Instead of suing in court, we each agree to settle disputes . . . only by arbitration," where "[t]here's no judge or jury." _Id._ at 444-45 (citations omitted). A valid arbitration agreement does not require advice on all component rights encompassed in a waiver of seeking relief

in court. Such a requirement would render arbitration clauses too complex, hard to understand, and easy to invalidate, in contravention of the strong public policy favoring arbitration. See Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super. 464, 480-81 (App. Div. 2015) (upholding an arbitration clause stating the parties would not "be able to sue in court," and rejecting plaintiffs' argument that the "the arbitration agreement must inform the parties of (1) the number of jurors, (2) the parties' rights to choose the jurors, (3) how many jurors would have to agree on a verdict, and (4) who will decide the dispute instead of the jurors.").

Here, the agreement made clear that the parties opted for arbitration to resolve their disputes rather than "lawsuit[s], action or [other] legal proceeding[s]," and the arbitration would be conducted before the American Arbitration Association, not a court. The agreement expressly provided, in bold letters, that plaintiff and Bergen Logistics waived their right to a trial by jury. Thus, the record provides no support for plaintiff's claim the arbitration agreement did not provide adequate notice plaintiff waived her right to prosecute her claims in a court proceeding and to a trial by jury. An enforceable arbitration agreement "at least in some general and sufficiently broad way, must explain that plaintiff is giving up her right to bring her

claims in court or have a jury resolve the dispute." <u>Atalese</u>, 219 N.J. at 447. The arbitration agreement meets that standard here.[4]

We also reject plaintiff's contention the agreement is not enforceable because she was not provided an opportunity to read it, could not understand it or was not informed of her right to confer with counsel. The argument is also contradicted by the plain language of the agreement, stating that by its execution plaintiff acknowledged and agreed she read it, had sufficient time to study and consider it, had sufficient time to confer with counsel of her choice, understood its terms, signed it knowingly and voluntarily, and did not rely on any statements or representations by Bergen Logistics in doing so. In plaintiff's submissions, she does not address this provision of the agreement or contend she did not, or could not, understand it.

---

[4] Because we have determined the agreement's putative waiver of plaintiff's right to seek punitive and exemplary damages is unenforceable, it is unnecessary to address her claim she did not knowingly and voluntarily agree to the waiver because the term "punitive and exemplary damages" was not explicitly defined in the agreement. We observe, however, that the damages waiver was clearly and unequivocally stated in the agreement, and plaintiff's inability to understand the term would not otherwise have been a defense to the enforceability of the arbitration agreement. <u>See</u> <u>New Gold Equities Corp. v. Jaffe Spindler Co.</u>, 453 N.J. Super 358, 381 (App. Div. 2018) (noting the general rule that a party to a contract is presumed to have read and understood its terms absent a showing of fraud or misconduct).

Moreover, "[a] party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect." Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992) (quoting Fivey v. Pa. R.R. Co., 67 N.J.L. 627, 632 (E. & A. 1902)). An employee who signs but claims to not understand an arbitration agreement will not be relieved from an arbitration agreement on those grounds alone. See Booker v. Robert Half Int'l, Inc., 315 F. Supp. 2d 94, 101 (D.D.C. 2004) ("Failing to read or understand an arbitration agreement, or an employer's failure to explain it, simply will not constitute 'special circumstances' warranting relieving an employee from compliance with the terms of an arbitration agreement that she signed."). Thus, plaintiff's claims she was unable to read or understand the agreement and, for some undisclosed reason, precluded from conferring with her counsel are unavailing, and did not require a plenary hearing.

Plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion.[5] R. 2:11-3(e)(1)(E).

---

[5] We note that at oral argument, plaintiff's counsel argued for the first time that the arbitration agreement contained an unenforceable fee-shifting provision, and that the combination of the fee-shifting provision and punitive damages waiver constituted and integrated scheme that rendered the agreement unenforceable.

A-5388-16T3

In sum, we affirm the court's order dismissing the complaint. The parties may proceed to arbitration in accordance with the arbitration agreement, but the provision barring recovery of punitive and exemplary damages is unenforceable and void. Plaintiff shall be permitted to prosecute her claims for such damages at arbitration.

Affirmed as modified.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

We do not address the fee-shifting argument either alone or as it pertains to any purported scheme because it was not raised before the motion court and does not involve jurisdictional or public interest concerns, Zaman v. Felton, 219 N.J. 199, 226-27 (2014), and was not briefed on appeal, see Jefferson Loan Co., Inc. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (finding that an issue not briefed on appeal is deemed waived).