**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0973-21

V.S.,[1]

    Plaintiff-Appellant,

v.

T-MOBILE, USA, INC., and
JAYSON PATROCHE,

    Defendants-Respondents.

_____

        Submitted June 7, 2022 – Decided June 21, 2022

        Before Judges Sumners and Firko.

        On appeal from the Superior Court of New Jersey, Law
        Division, Essex County, Docket No. L-2946-21.

---

[1] In her complaint, plaintiff used initials in lieu of her full name to protect her identity citing Rule 1:38-3 claiming she is a victim of a sexual offense, which is provided in Rule 1:39-3(c)(12). However, Rule 1:39-3(c)(12) is limited to actions commenced in the criminal and municipal courts. Plaintiff should have filed an application with the trial court for authorization to proceed with her complaint using her initials. For purposes of consistency, we refer to plaintiff as V.S. in this opinion.

Stradley Ronon Stevens & Young, attorneys for appellant (Andrew Hamelsky and Zaara Bajwa Nazir, on the briefs).

Goldberg Segalla, LLP, attorneys for respondent T-Mobile, USA, Inc. (Thomas J. O'Grady, on the brief).

PER CURIAM

Plaintiff V.S. appeals from the October 26, 2021 Law Division order dismissing her complaint against defendant T-Mobile, USA, Inc. (T-Mobile) without prejudice and compelling arbitration. Plaintiff's complaint alleges thirteen causes of action against T-Mobile and defendant Jayson Patroche stemming from events, which occurred on February 5, 2021, involving her purchase of a new cell phone and the unauthorized transfer of nude photos and data. For the reasons that follow, we affirm.

I.

The following facts are derived from the motion record. On February 5, 2021, plaintiff went to a T-Mobile retail store in Montclair to purchase a new cell phone. The retail store is operated by third-party vendors of T-Mobile, Portables Unlimited, Inc. and Elite One Mobile, Inc.

Plaintiff claims "the T-Mobile employees advised [her] that they could transfer data from her old cell phone to the new one she was purchasing that day." Plaintiff gave Patroche her old cell phone to transfer the data, and he

2

informed her the transfer would take a while. According to plaintiff, she left the store to pick up her child with her new cell phone but left her old cell phone at the store with Patroche "while the data was still uploading to her new cell phone." Plaintiff was to "call the T-Mobile [s]tore once her data fully uploaded to her new cell phone to let the T-Mobile [s]tore know that they could delete the data from her old cell phone."

Once the data came through to the new phone, plaintiff notified the store. An employee other than Patroche directed her to return to provide a password in order to delete the data on the old cell phone. The employee gave plaintiff her old cell phone back upon her arrival. Plaintiff alleges she saw "nine of [her] highly personal nude photos were texted to a phone number with a 973 area code" while Patroche possessed her old cell phone at the store. She then called the number and observed Patroche "pick[] up his own personal phone." When plaintiff confronted Patroche, he denied sending her nude photos to his cell phone. He had allegedly been in possession of plaintiff's old cell phone "for three hours."

In her complaint, plaintiff avers the following day she "searched the trash folder of her email" and saw that Patroche "sent an additional [eighteen] nude images of [p]laintiff from her personal email to his personal email address

3

during the time he" possessed her cell phone.  In addition, "[p]laintiff then discovered that a photo of her credit card that [she] had taken one year prior had been illegally downloaded and stolen off of [her] cloud during" that same time.

On April 12, 2021, plaintiff filed her complaint against defendants alleging the following causes of action:  sexual harassment and discrimination due to gender under the New Jersey Law Against Discrimination Act, N.J.S.A. 10:5-1 to -50 (count one); the New Jersey Computer-Related Offenses Act, N.J.S.A. 2A:38A-1 to -6 (count two); invasion of privacy, unreasonable intrusion upon the seclusion of another (count three); invasion of privacy and invasion of privacy with photographs in violation of N.J.S.A. 2A:58D-1 to (count four); negligent hiring as to T-Mobile (count five); negligent retention as to T-Mobile (count six); negligent training as to T-Mobile (count seven); negligent supervision as to T-Mobile (count eight); negligence (count nine); harassment (count ten); harassment in violation of N.J.S.A. 2C:33-4 (count eleven); intentional infliction of emotional distress (count twelve); and theft (count thirteen).

On July 19, 2021, T-Mobile filed its answer and affirmative defenses.  T-Mobile denied Patroche was its employee and asserted plaintiff's claims were subject to arbitration.  Plaintiff was a subscriber of wireless services from T-

4

Mobile, which was subject to terms and conditions (T&Cs) as of September 1, 2020. T-Mobile's T&Cs begin by visibly stating: "Thanks for choosing T-Mobile. Please read these [T&Cs], which contain important information about your relationship with T-Mobile, including mandatory arbitration of disputes between us, instead of class actions or jury trials. You will become bound by these provisions once you accept these T&Cs." (Emphasis added). Under the section entitled "**HOW DO I ACCEPT THESE T&Cs?**"[2] found shortly thereafter, the T&Cs explain to the reader:

> You accept these T&Cs by doing any of the following things:
>
> - giving us a written or electronic signature or confirmation, or telling us orally that you accept;
> - activating, using or paying for the Service or a Device; or
> - opening the Device box.
>
> If you don't want to accept these T&Cs, don't do any of these things.

The following section entitled "**WHAT IS INCLUDED IN THESE T&Cs?**" states the consumer will find important information in the T&Cs about

---

[2] In our opinion, we use the bolded language for T-Mobile's T&Cs as found in its original form.

5

"[r]esolution of disputes by arbitration and class action and jury trial waivers,"

and other information.

Most relevant to this action is the section conspicuously entitled "**HOW DO I RESOLVE DISPUTES WITH T-MOBILE?**" The section states in part:

> By accepting these T&Cs, you are agreeing to resolve any dispute with us through binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit. . . .
>
> **Dispute Resolution and Arbitration. YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.** This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third[-]party vendors) whenever you also assert claims against us in the same proceeding. You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME

6

A-0973-21

DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).

. . . .

Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES <u>WITHIN [THIRTY] DAYS</u> FROM THE EARLIER OF THE DATE YOU PURCHASED A DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE (the "Opt Out Deadline")**. You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or online at <u>www.T-Mobiledisputeresolution.com</u>. **Any opt-out received after the Opt Out Deadline will not be valid and you will be required to pursue your claim in arbitration or small claims court.**

On September 1, 2021, T-Mobile filed a motion to dismiss plaintiff's complaint and to compel arbitration as per the T&Cs. In support of its motion, T-Mobile submitted the certification of Christopher Muzio, an analyst and team Chief Executive Officer, for T-Mobile, and a copy of the T&Cs. Muzio certified that plaintiff subscribed to T-Mobile at all relevant times to the allegations; the retail store was operated by a third-party vendor; she activated service from T-Mobile; and she had not opted out of the arbitration procedures provided for in the T&Cs.

7

Plaintiff asserted five points in her opposition to T-Mobile's motion to dismiss and compel arbitration: (1) she did not sign the alleged portions of the T&Cs; (2) T-Mobile failed to provide her with its purported T&Cs; (3) section two of the Federal Arbitration Act (FAA) does not warrant arbitration in this matter; (4) T-Mobile was on notice that its employees were invading customers' privacy before; and (5) if arbitration was compelled, the trial court should stay, not dismiss, her matter.[3]

On October 26, 2021, Judge Vena heard oral argument on the motion. Following argument that day, the judge granted T-Mobile's motion and stated:

> [T&Cs] in the very first paragraph are clear that any disputes are to be arbitrated as opposed to a jury trial. Thus, the [c]ourt is satisfied that both the notice to the plaintiff, as well as the language within the arbitration agreement merely informs the plaintiff of plaintiff's waiver of access to the courts.
>
> . . . This [c]ourt is satisfied that the terms are clear, that all claims and disputes related to the agreement are encompassed.
>
> . . . This [c]ourt finds plaintiff may pursue a claim against a third[-]party as alleged in the complaint in court and without arbitration, as long as . . . T-Mobile is not joined.

---

[3] There are several references to plaintiff's opposition papers throughout the briefs, transcript and Judge Thomas R. Vena's opinion. However, no such documents are included in the record on appeal.

8

In his written statement of reasons, Judge Vena found "the claims alleged by [p]laintiff are within the scope of the arbitration agreement." The judge emphasized in the first paragraph of the T&Cs, its "clear that any disputes are to be arbitrated, as opposed to a jury trial." Regarding plaintiff's argument that the additional claims against T-Mobile, such as "theft and harassment, are beyond the scope of the arbitration agreement[,]" the judge found the T&Cs "are clear" and "<u>all</u> claims or disputes related to the agreement are encompassed." In addition, the judge determined plaintiff may "pursue a claim against the third parties alleged in this complaint, in court and without arbitration, so long as [d]efendant T-Mobile is <u>not</u> joined." A memorializing order was entered.

On December 1, 2021, plaintiff appealed the October 26, 2021 order. On January 5, 2022, plaintiff filed a motion in the Law Division for leave to file and serve an amended complaint against Portables Unlimited and Elite One Mobile, operators of the retail store and Patroche's employers.[4]

On appeal, plaintiff presents the following arguments for our consideration:

> I. THE TRIAL COURT'S JUDGMENT DISMISSING THE COMPLAINT AND COMPELLING ARBITRATION MUST BE REVIEWED DE NOVO. (Issue not raised below).

_____

[4] The record does not indicate the disposition of the motion.

II. THE ALLEGED [T&Cs] ARE UNFAIR AS ASSENT IS IMPOSED WHEN A CUSTOMER OPENS A BOX.

III. THE TRIAL COURT ERRED IN FINDING THAT T-MOBILE'S [T&Cs] APPLIED TO [PLAINTIFF]'S CLAIMS.

IV. THE TRIAL COURT ERRED IN DISMISSING THE COMPLAINT INSTEAD OF A STAY.

## II.

Orders compelling or denying arbitration are treated as final orders for purposes of appeal. R. 2:2-3(a); GMAC v. Pittella, 205 N.J. 572, 586 (2011). The validity of an arbitration agreement is a question of law. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 446 (2014) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). Accordingly, the appellate court applies a de novo standard of review when determining the enforceability of arbitration agreements. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch, 215 N.J. at 186). As such, "we need not give deference to the analysis by the trial court." Ibid. However, a trial court's factual findings are reviewed for an abuse of discretion. See Cumberland Farms, Inc. v. N.J. Dep't of Env't. Prot., 447 N.J. Super. 423, 437-38 (App. Div. 2016). "The general rule is that findings by the trial court are binding on appeal when supported by adequate,

substantial, credible evidence." Ibid. (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)).

Both the Federal and the New Jersey Legislatures have "enunciate[d] federal and state policies favoring arbitration." Atalese, 219 N.J. at 440 (citations omitted); see also Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002) ("[T]he affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes." (citing Barcon Assocs. v. Tri-Cnty. Asphalt Corp., 86 N.J. 179, 186 (1981))).[5]

The FAA, 9 U.S.C.A. § 1 -307, requires courts to "place arbitration agreements on equal footing with all other contracts." Skuse v. Pfizer, Inc., 244 N.J. 30, 47 (2020) (internal quotation marks omitted) (quoting Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. ___, 137 S. Ct. 1421, 1424 (2017)). Under the FAA, "a state may not 'subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts,'" or invalidate the agreement through "state-law 'defenses that apply only to

---

[5] We note that on May 23, 2022, the United States Supreme Court published its opinion in the matter of Morgan v. Sundance, Inc. The Court held although the FAA's policy favors arbitration, "a court may not devise novel rules to favor arbitration over litigation." ___ U.S. ___, 142 S. Ct. 1708 (2022). Procedures may not be implemented to "tilt the playing field in favor of (or against) arbitration." Ibid.

arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" Ibid. (first quoting Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003); and then quoting Atalese, 219 N.J. at 441). The FAA, however, does not bar all state-law defenses and "specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles." Ibid. (quoting Martindale, 173 N.J. at 85).

Similarly, the New Jersey Legislature codified its own endorsement of arbitration agreements in the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36. See Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). The statute was enacted to "advance arbitration as a desirable alternative to litigation and to clarify arbitration procedures in light of the developments of the law in this area," Assemb. Judiciary Comm. Statement to S. 514 1 (Dec. 9, 2002), and "is nearly identical to the FAA," Arafa v. Health Express Corp., 243 N.J. 147, 167 (2020) (citing Atalese, 219 N.J. at 440). The NJAA provides "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." N.J.S.A. 2A:23B-6(a).

A-0973-21

Consequently, New Jersey courts "may 'regulate [arbitration] agreements, including those that relate to arbitration, by applying its contract-law principles that are relevant in a given case.'" Skuse, 244 N.J. at 47 (quoting Leodori, 175 N.J. at 302). When reviewing a motion to compel arbitration, courts apply a two-pronged inquiry: (A) whether there is a valid and enforceable agreement to arbitrate disputes; and (B) whether the dispute falls within the scope of the agreement. Martindale, 173 N.J. at 83, 92.

Plaintiff asserts that "there was no agreement to arbitrate" due to lack of mutual assent. Specifically, plaintiff argues T-Mobile never procured her signature assenting to the T&Cs, thus precluding mutual assent required for a valid arbitration agreement. She adds the T&Cs were a contract of adhesion and the parties' respective bargaining powers made T-Mobile's accepted methods of assent improper.

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese, 219 N.J. at 442 (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). In determining whether a valid agreement to arbitrate exists, we apply "state contract-law principles." Hojnowski, 187 N.J. at 342; accord Kernahan v. Home Warranty Admin. of Fla.,

13

Inc., 236 N.J. 301, 317-18 (2019). Under those principles, "[a]n arbitration agreement is valid only if the parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'" Kernahan, 236 N.J. at 317 (quoting Volt Info. Scis., Inc. v. Bd. of Ts. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)).

"A contract arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonably certainty." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (internal quotation marks omitted). Where parties agree on essential terms and manifest some intention to be bound by those terms, an enforceable contract is created. Ibid. Therefore, a court must determine whether a valid agreement to arbitrate exists before it can decide whether the dispute in question falls within the scope of the agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626 (1985); Martindale, 173 N.J. at 92.

Thus, the first inquiry is whether the parties actually and knowingly agreed to arbitrate their dispute. Ibid.; see also Atalese, 219 N.J. at 442. This inquiry begins with the language of the arbitration clause. See Atalese, 219 N.J. at 443. To be enforceable, an arbitration agreement must be clear in stating that the parties are agreeing to arbitrate and give up the right to pursue a claim in

court.  Flanzman v. Jenny Craig Inc., 244 N.J. 119, 137 (2020) (citing Atalese, 219 N.J. at 447).

As our Court explained in Atalese:

> Mutual assent requires that the parties have an understanding of the terms to which they agreed.  An effective waiver requires a party to have full knowledge of his [or her] legal rights and intent to surrender those rights.  By its very nature, an agreement to arbitrate involves a waiver of a party's right to have [his or] her claims and defenses litigated in court.  But an average member of the public may not know—without some explanatory comment—that arbitration is a substitute for the right to have one's claim adjudicated in a court of law.
>
> . . . .
>
> No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights.  It is worth remembering, however, that every consumer contract in New Jersey must be written in a simple, clear, understandable and easily readable way.  Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer.
>
> [219 N.J. at 442-44 (internal quotation marks omitted) (citations omitted).]

In holding the parties did not enter into an enforceable arbitration agreement, the Court noted:

> Nowhere in the arbitration clause is there any explanation that plaintiff is waiving her right to seek

15

relief in court for a breach of her . . . rights. . . . The provision does not explain what arbitration is, nor does it indicate how arbitration is different from a proceeding in a court of law. Nor is it written in plain language that would be clear and understandable to the average consumer that she is waiving statutory rights. The clause here has none of the language our courts have found satisfactory in upholding arbitration provisions—clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief.

[Id. at 446.]

Furthermore, in the matter under review, because the parties' agreement is a consumer contract under N.J.S.A. 56:12-1—T-Mobile provides wireless services to plaintiff—it must "be written in a simple, clear, understandable and easily readable way." N.J.S.A. 56:12-2. "For any waiver-of-rights provision to be effective, the party who gives up rights must 'have full knowledge of his [or her] legal rights and intent to surrender those rights.'" Skuse, 244 N.J. at 48 (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). That is, the waiver "'must reflect that [the party] has agreed clearly and unambiguously' to its terms." Atalese, 219 N.J. at 443 (alteration in original) (quoting Leodori, 175 N.J. at 302).

Under the guise of Atalese, this court reached the opposite conclusion to that of Atalese in Roman v. Bergen Logistics, LLC, 456 N.J. Super. 157 (App.

A-0973-21

Div. 2018).  In <u>Roman</u>, we determined the arbitration agreement enforceable because "the agreement made clear that the parties opted for arbitration to resolve their disputes," plaintiff "was prohibited from filing any other lawsuits or legal proceedings," and "expressly provided, in bold letters, that [the parties] waived their right[s] to a trial by jury."  <u>Id.</u> at 172-73.  "The agreement also expressly state[d] that any covered claims 'shall be resolved exclusively by final and binding arbitration.'"  <u>Id.</u> at 172.

We reached the same conclusion in the factually similar matter of <u>Curtis v. Cellco P'ship</u>, 413 N.J. Super. 26, 41-42 (App. Div. 2010).  In <u>Curtis</u>, the plaintiff consumer entered into a service agreement with the defendant cellular telephone service provider d/b/a Verizon Wireless.  <u>Id.</u> at 30-33.  The service agreement included a conspicuously placed arbitration clause explicitly notifying the reader in capitalized, bold letters that the parties agree to resolve any controversy or claim arising from the agreement in binding arbitration.  <u>Ibid.</u> Moreover, the provision stated in the same format that each party waived their right to trial by jury.  <u>Id.</u> at 31.

The plaintiff ultimately sued the defendant for violating the Consumer Fraud Act, among other things, after defendant reported plaintiff to collections for non-payment of the outstanding balance.  <u>Id.</u> at 30.  The plaintiff argued the

17

trial court's decision to grant defendant's motion to dismiss and compel arbitration per the arbitration clause was error. Id. at 33. But we affirmed, holding the arbitration clause enforceable because "the provisions requiring arbitration [were] unambiguous, highlighted, and easily understood." Id. at 37.

In addition, we stated although the language did "not expressly identify the applicability of arbitration to federal and state statutory claims," the agreement "unmistakably inform[ed] a consumer accepting its terms for wireless telephone service that he or she must settle 'any controversy or claim arising out of or related to th[e] agreement' in arbitration, where 'there is no judge or jury.'" Id. at 38 (second alteration in original).

Here, we are satisfied Judge Vena properly found T-Mobile's T&Cs contained a valid and enforceable agreement to arbitrate disputes. Martindale, 173 N.J. at 83. Mutual assent is discernible between plaintiff and T-Mobile because the first page of the T&Cs conspicuously and explicitly states opening the device box will accept the T&Cs and warns the consumer about important mandatory arbitration information. And, within the T&Cs, the arbitration clause uses bold, capital letters, and explains in straightforward terms that by accepting the T&Cs each party agrees to settle all disputes through binding arbitration.

A-0973-21

The arbitration clause continues to alert the reader that by accepting, the parties agree to waive their right to a jury trial.

Unlike in Atalese, the language of the T-Mobile consumer contract here is satisfactorily "'written in a simple, clear, understandable and easily readable way'" so that "an average member of the public may . . . know—without some explanatory comment—that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." 219 N.J. Super. at 442, 444 (quoting N.J.S.A. 56:12-2). Like the agreements in Roman and Curtis, we are satisfied T-Mobile expressly informed plaintiff that she was waiving her right to a trial by jury to resolve all disputes arising from the agreement. Roman, 456 N.J. Super. at 173-74; Curtis, 413 N.J. Super. at 37-38.

T-Mobile's agreement used plain language as mentioned and utilized bold lettering and conspicuous placement like those in Roman and Curtis. Roman, 456 N.J. Super. at 172-73; Curtis, 413 N.J. Super. at 30-33. Therefore, we conclude there was mutual assent here because the arbitration provision reflects that plaintiff "clearly and unambiguously" agreed to waive her right to a jury trial and submit to binding arbitration. Atalese, 219 N.J. at 443.

Furthermore, a party's signature is "not strictly required." Leodori, 175 N.J. at 306-07. Absent a signature, the party seeking to enforce an arbitration

19

agreement must provide some other explicit or unmistakable indication that a party affirmatively agreed to and intended to adhere to the subject arbitration clause. Id. at 305. Plaintiff claims T-Mobile imposed assent on her, but the agreement shows otherwise. Although plaintiff did not sign the agreement, she opened the device box and activated T-Mobile's service. These are explicitly and unmistakably defined methods of acceptance conspicuously found on the first page of the T&Cs. Consequently, plaintiff was clearly informed as to what rights she was waiving and how she was waiving them.

Plaintiff's bargaining-power argument also lacks merit. As discussed in the factually similar Curtis case, telecommunication service providers, along with other major companies, routinely utilize arbitration agreements with their consumers. 413 N.J. Super. at 41-42. Since T-Mobile's arbitration agreement meets these requirements, it is therefore enforceable. E.g., ibid.

Lastly of significance, "[a]s a general rule, 'one who does not choose to read a contract before signing it cannot later relieve himself of its burdens.'" Skuse, 244 N.J. at 54 (alteration in original) (quoting Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 238 (App. Div. 2008)). Included in the arbitration agreement is a simply stated, conspicuous opt-out clause.

A-0973-21

Plaintiff admits she failed to read the T&Cs, and now cannot seek to avoid a valid arbitration agreement. Therefore, we reject plaintiff's argument.

III.

Plaintiff also contends that her claims are beyond the scope of T-Mobile's arbitration agreement. "Regarding the scope of the arbitration clause, '[c]ourts have generally read the terms "arising out of" or "relating to" [in] a contract as indicative of an "extremely broad" agreement to arbitrate any dispute relating in any way to the contract.'" Curtis, 413 N.J. Super. at 37-38 (emphasis added) (quoting Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010)). Such broad clauses, as the one here, "have been construed to require arbitration of any dispute between the contracting parties that is connected in any way with their contract." Id. at 38.

Specifically, plaintiff argues that ten of her thirteen causes of action are beyond the scope of the arbitration agreement, including invasion of privacy, sexual harassment, negligent hiring, theft, and violation of the New Jersey Computer-Related Offenses Act. However, the language of the arbitration provision here is sufficiently broad to require all claims to be arbitrated. Martindale, 173 N.J. at 96. Indeed, all of the pleaded claims are related to the

T&Cs, or T-Mobile's service, devices, or privacy policy. The cause of events all stem from the service T-Mobile provided plaintiff at the retail store.

Even if T-Mobile is arguably not responsible for Patroche because he is an employee of the third-party vendors, Portables Unlimited, Inc. and Elite One Mobile, Inc., who operated the Montclair retail store, plaintiff asserted claims against T-Mobile in the same action as Patroche. The arbitration clause states, "that any claims against other parties relating to [s]ervices or [d]evices provided or billed . . . (such as our suppliers, dealers, authorized retailers, or third[-]party vendors)" are included "whenever you also assert claims against us in the same proceeding." This is significant because had plaintiff not asserted any actions against Patroche in the same action, her claims would not be subject to arbitration. Similar to the opt-out provision discussed above, whether plaintiff failed to read the T&Cs or consciously asserted claims against T-Mobile in the same action as Patroche, she cannot now seek to avoid arbitration. The T&Cs clearly and broadly state any and all claims are subject to arbitration, to which plaintiff assented to.

We conclude the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-0973-21

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0973-21